<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEHAD ALBIBI and<br>MALIKA MANSOUR, his wife,<br><br>   Plaintiffs,<br><br> v.<br><br>TIGER MACHINE CO., LTD.,<br>TIGER INTERNATIONAL, INC.,<br>PATHFINDER SYSTEMS, STANDLEY<br>BATCH SYSTEMS, INC., AND JOHN DOES<br>1-7 (NAMES BEING FICITIOUS),<br><br>   Defendants.<br><br>And<br><br>PATHFINDER SYSTEMS,<br><br>   Defendant/Third-Party Plaintiff,<br><br> v.<br><br>CAMBRIDGE PAVERS, INC.,<br><br>   Third-Party Defendant. | Civil Action No. 11-5622 (JLL)<br><br>**OPINION** |

**LINARES, District Judge.**

  This matter comes before the Court by way of two motions for summary judgment: (1) Defendant Standley Batch System ("SBS" or "Defendant")'s motion for summary judgment as to Plaintiffs Jehad Albibi's personal injury claims and his wife, Malika Mansour's, per quod claim, [CM/ECF No. 88], and (2) Third-Party Defendant Cambridge Pavers, Inc. ("Cambridge Pavers") motion for summary judgment as to Third-Party Plaintiff Pathfinder Systems ("Pathfinder")'s claims seeking contribution and indemnity. [CM/ECF No. 87.] The Court has considered the

1

submissions made in support of and in opposition to both motions, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, SBS's motion and Cambridge Pavers' motion are both granted.

I. **BACKGROUND**

As the Court writes only for the parties, it will set forth only those facts it deems relevant to deciding Defendant Standley Batch Systems and Third-Party Defendant Cambridge Pavers' respective motions.

Plaintiff Jehad Albibi was injured on June 17, 2009 while working as a machine operator with Cambridge Pavers. (Defendant SBS's Local Civil Rule 56.1(a) Statement of Material Facts Not in Dispute (hereafter "SBS Rule 56.1(a) Statement"), ¶1.) The machine that Albibi operated was a PS100 Tiger Paver Stone Machine ("PS100"). (*Id.* at ¶8.) The PS100 was used to mold wet concrete into paving stones. (Plaintiffs Jehad Albibi and Malika Masour's Br. in Opposition to Defendant Standley Batch System's Motion for Summary Judgment (hereafter "Albibi Br."), Exhibit A.) SBS's conveyor belt system was used to feed the wet concrete to the PS100. (*Id.*)

Tiger Machine Co. ("Tiger"), a Japanese company, manufactured the PS100. (Defendant SBS Br. in Support for Summary Judgment (hereafter "SBS Br."), Exhibit C; Third-Party Defendant Cambridge Pavers Br. in Support of Summary Judgment (hereafter "Cambridge Pavers Br."), Exhibit F.) Tiger's representative in the United States, Pathfinder, sold the machine to Cambridge Pavers. (SBS Br., Exhibit C; Cambridge Pavers Br., Exhibit F.) Pathfinder also supplied the SBS belt system to Cambridge Pavers. (SBS Br., Exhibit C; Cambridge Pavers Br., Exhibit F.) Both the PS100 and the SBS conveyor belt were contained within a sound enclosure that was manufactured by Tiger and sold to Cambridge Pavers by Pathfinder. (Cambridge Pavers Br., Exhibit H.)

On June 17, 2009, while operating the PS100, Albibi noticed that the faces of the paving stones being produced were misshapen. (Albibi Br., Exhibit A.) He also saw that dried concrete was accumulating around the chute of the machine. (*Id*.) After trying to dislodge the accumulation from inside the sound enclosure, he decided to remove the build-up from the roof of the sound enclosure. (*Id*.) He turned off the conveyor belt system and the PS100 from their control panels and climbed up to the roof. (*Id*.) Once there, Albibi took a metal rod and began to break loose the dried concrete. (*Id*.) While doing so, he lost his balance and fell down through an opening and into the feeder hopper of the PS100. While falling, Albibi held on to the ledge of the chute, avoiding crashing into the bottom of the hopper. (*Id*.) He managed to stand on a ledge below his feet while he was hanging and pulled himself back up to the roof of the sound enclosure. (*Id*.) As a result, he suffered several permanent injuries. (*Id*.)

After his accident, Albibi filed for workers' compensation against his employer, Cambridge Pavers. Plaintiffs' counsel was retained on August 19, 2010, a year and four months after the accident. (Plaintiff's Reply Certification of John VR. Strong Jr., Esq. Pursuant to Rule 4:26-4 (Fictitious Names) as to Due Diligence (hereafter "Fictitious Party Certification"), ¶2.) Counsel requested an on-site inspection of the machine in question on December 20, 2010 through an adjuster for Cambridge Pavers' workers' compensation insurance carrier. (*Id.* at ¶4.) He followed up with that adjuster regarding his request on March 25, 2011. (*Id.* at ¶¶4-5.) Because of scheduling conflicts between Plaintiffs' retained expert engineer and Cambridge Pavers, Plaintiffs inspected the accident site with their counsel and the expert engineer on August 8, 2011, almost a year after counsel was retained and two months after the Statute of limitations expired for Plaintiffs' causes of action. (*Id.* at ¶¶ 7-13.)

Plaintiffs filed their original complaint on June 7, 2011. (Docket #1-1.) Plaintiffs named Tiger and Pathfinder as defendants but did not include SBS as a named party in their original complaint. (*Id.*) Instead, Plaintiffs named fictitious defendants described as "the assemblers, sellers, owners, distributors, designers, testers, manufacturers, installers, maintainers, repairers, promoters, labelers and/or inspectors of a certain paving stone machine and its component parts, including platforms constructed and attached to and/or adjacent to such machine for the protection of, and use by, workers working on such machine to dislodge concrete stuck in the machine, which plaintiff was working on when he was injured on or about June 17, 2009." (*Id.*)

On October 19, 2011, counsel for Pathfinder told Plaintiffs' counsel that SBS should be added as a defendant in an amended complaint. (Fictitious Party Certification, ¶20.) Plaintiffs filed their Amended Complaint on January 13, 2012, almost six months after the Statute of limitations expired. (Docket #12.)

Defendant/Third-Party Plaintiff Pathfinder filed a Third-Party Complaint against Cambridge Pavers on June 12, 2012 alleging claims of contribution and indemnification. (Docket #28.) Defendant SBS filed a motion for summary judgment as to Plaintiffs Albibi and his wife's claims against it. (Docket #88.) Third-Party Defendant Cambridge Pavers filed a motion for summary judgment as to Pathfinder's claims of contribution and indemnification against it. (Docket #87.)

## II.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must first demonstrate that there is no genuine issue of material fact. *Celotex v. Catrett,* 477 U.S. 317 (1986). Courts construe facts and inferences in the light

4

most favorable to the non-movant in order to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 202 (1986). An issue is "genuine" if the evidence is such that a reasonable jury could find for the non-moving party. *Id.* at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "Thus, if a reasonable fact finder could find in the nonmovant's favor, then summary judgment may not be granted." *Norfolk Southern Ry. Co. v. Basell USA Inc.,* 512 F.3d 86, 91 (3d Cir. 2008).

### III. DISCUSSION

   a. Defendant Standley Batch Systems' Motion for Summary Judgment

New Jersey law provides a two-year statute of limitations for personal injury actions such as the ones at issue in this case. *See* N.J.S.A. § 2A:14–2 ("Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within 2 years next after the cause of any such action shall have accrued.") This same statute of limitations applies to a spouse's per quod claim. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 570 (3d Cir. 1976). Defendant SBS argues that summary judgment should be granted in its favor because Plaintiffs' claims are time-barred. SBS also argues that Plaintiffs' claims do not relate back to the original complaint because: (1) SBS does not fit the Plaintiffs' "John Does 1-10" description and (2) Plaintiffs failed to exercise due diligence in ascertaining the identity of SBS. Because it is apparent that Plaintiffs failed to exercise due diligence in discovering SBS's identity prior to the expiration of the two-year statute of limitations, it will not consider Defendant's first argument.

Plaintiffs filed their original complaint on June 7, 2011, ten days before the expiration of the statute of limitations. (Docket #1-1.) In that complaint, Plaintiffs named several fictitious parties as defendants. (*Id*.) They filed their Amended Complaint, in which they substituted one of the John Does with SBS, on January 13, 2012, almost six months after the statute of limitations expired. (Docket #12.) "The naming of a John Doe defendant in a complaint does not stop the statute of limitations from running . . . as to that defendant." *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3rd Cir. 2003). Therefore, Plaintiffs' amended complaint is time-barred as to SBS "unless it meets the requirements of Federal Rule of Civil Procedure 15(c), which allows amendments to relate back to the filing date of the original complaint." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 276 (3d Cir. 2004).

Under Rule 15(c) of the Federal Rules of Civil Procedure, an amended complaint may relate back to the original complaint if "the law that provides the applicable statute of limitations allows relation back[.]" Fed. R. Civ. P. 15(c)(1)(a). New Jersey law permits an amended complaint to relate back "if the defendant's true name is unknown" at the time the complaint is filed. *See Padilla,* 110 F.App'x at 277 (quoting N.J.R. 4:26-4). In order for a plaintiff to properly invoke this fictitious defendant rule:

> First, the plaintiff must not know the identity of the defendant said to be named fictitiously. Second, the fictitiously-named defendant must be described with appropriate detail sufficient to allow identification. Third, a party seeking to amend a complaint to identify a defendant previously named fictitiously must provide proof of how it learned the defendant's identity. Fourth, although not expressly stated in the Rule, it is well-settled that the Rule is unavailable to a party that does not act diligently in identifying the defendant.

*Sarmineto v. St. Mary's Hosp. Passaic, NJ*, CIV.A. 10-2042 JLL, 2012 WL 5250219, at *4-5 (D.N.J. Oct. 23, 2012) (Linares, J.) (citing *Andreoli v. State Insulation Corp.,* No. A–2636–10T4, 2011 WL 4577646 (N. J. Super. Ct. App. Div. Oct. 5, 2011)).

"The fictitious party rule may be used only if the plaintiff exercised due diligence to ascertain the defendant's true name before and after filing the complaint." *DeRienzo v. Harvard Indus., Inc.,* 357 F.3d 348, 353 (3d Cir. 2004) (citing *Farrell v. Votator Div. of Chemetron Corp.,* 62 N.J. 111 (1973); *Claypotch v. Heller, Inc.,* 360 N.J.Super. 472 (2003)). Therefore, it cannot apply if a plaintiff knows, or should have known through due diligence, the defendant's identity prior to the expiration of the statute of limitations. *Id.* (citing *Mears v. Sandoz Pharms., Inc.,* 300 N.J.Super. 622 (1997)).

The Supreme Court of New Jersey has not provided a standard definition of diligence, since "the meaning of due diligence will vary with the facts of each case." *O'Keefe v. Snyder,* 83 N.J. 478, 416 A.2d 862, 873 (1980). However, plaintiffs must "investigate all potentially responsible parties in a timely manner to cross the threshold for due diligence." *Matynska v. Fried,* 175 N.J. 51, 53 (2002).

In *Matynska v. Fried,* the Supreme Court of New Jersey denied a plaintiff's request to amend her complaint under the fictitious party rule because she failed to investigate "all potentially responsible parties in a timely manner." *Id.* at 53-54. In that case, the plaintiff brought a malpractice suit against her regular orthopedic surgeon and several fictitious parties. Her regular surgeon had been replaced with a different physician, whose identity was not discovered until after the Statute of limitations had expired. *Id.* at 52. The Supreme Court of New Jersey reasoned that "[b]y merely looking in a telephone book or contacting Dr. Fried or the hospital . . . plaintiff could have easily discovered Dr. Feierstein's role in her surgery." *Id.* at 53. Thus, the Court held that the plaintiff "failed to cross the threshold for due diligence. *Id.*

Similarly, in *Mears v. Sandoz Pharmaceuticals,* "[a] New Jersey appellate court held that plaintiff's failure to exercise due diligence precluded application of the fictitious party rule." 300

7

N.J.Super at 629. In that case, the court found that the plaintiff "would have easily discovered the identity" of the fictitious party within the Statute of limitations had the plaintiff made a "simple inquiry at the job site…" *See id.*

In this case, Plaintiffs' lack of diligence in determining the identity of SBS precludes him from being able to relate his amended complaint back to his original one. Albibi's deposition transcript makes clear that he knew that SBS had installed the conveyor belt system before the statute of limitations expired. Specifically, Albibi testified that he "knew that Standley Batch did the batching system" since 2002. (SBS Br., Exhibit D.) He admitted that he knew SBS installed the conveyor belt system and that the conveyor belts fed the raw material into the PS100. (*Id.*) He explained that the PS100 and the SBS conveyor belt system each had its own control panel. (*Id.*) He also explained that the SBS control panel was "three or four feet" from the PS100 control panel. (*Id.*) In fact, on the day of his accident, he had to turn off the PS100 machine and the belt system using the different control panels before he attempted to dislodge the dried concrete from the chutes. (Albibi Br., Exhibit A.) In addition, Albibi stated that SBS's name was written on the conveyor belt system control panel. (SBS Br., Exhibit D.) He also stated that the SBS conveyor belt system had been used with the PS100 since he began work in 2002 and had never been changed. (*Id.*) Thus, Albibi saw the Standley Batch brand on the conveyor belt system control panel every time he operated the machine from 2002 until he got injured in 2009.

Plaintiffs did not dispute the fact that Albibi knew that SBS installed the conveyor belt system. (Plaintiffs' Response to SBS Rule 56.1(a) Statement, ¶11.) Instead, they argued that they diligently investigated SBS's identity. Even if this Court does not conclude that Plaintiff Albibi knew SBS's identity before the Statute of Limitation expired based on the statements he made during his deposition, Plaintiffs' counsel still failed to act diligently in discovering the

Defendant's identity. By asking his client, Plaintiffs' counsel could have learned that Albibi operated two different control panels, one for the PS100 machine and another for the conveyor belt system, and that the conveyor belt system control panel was identified with SBS's name.

Though Plaintiffs argue that the search for Defendant's identity was done diligently because Plaintiffs' counsel attempted to conduct an on-site inspection of the machine in question, this argument falls short of creating a genuine issue of material fact that Plaintiffs either knew or should have known SBS's identity. This is so, particularly in light of Plaintiffs' delay in investigating the facts of this case.

Plaintiff's counsel was retained on August 19, 2010. (Fictitious Party Certification, ¶2.) However, he did not begin the investigation process until four months later. (*See id.* at ¶¶2-3.) Plaintiffs requested an on-site inspection on December 20, 2010 through an adjuster for the workers' compensation insurance carrier for Albibi's employer, Cambridge Pavers. (*Id.* at ¶3.) Though he received a fax from one of the adjusters the next day, he did not follow up with that adjuster until March 25, 2011. (*Id.* at ¶¶4-5.) On March 30, he was asked by a representative of the insurance carrier to send them the dates that Plaintiff's expert engineer would be available for an on-site visit. (*Id.* at ¶6.) Plaintiff's counsel did not contact the expert engineer until April 27, 2011. (*Id.* at ¶7.) The expert told counsel that he would not be available until June 6. (*Id.*) Yet, because of scheduling conflicts, Plaintiffs did not inspect the machine in question until August 8, 2011, almost a year after counsel was retained. (*Id.* at ¶¶ 7-13.)

Despite the fact that Albibi, his counsel, and the engineering expert made the scheduled on-site examination together, Plaintiffs did not "discover" SBS's identity as a result of that inspection, even though Albibi stated in his deposition that SBS's name was written on the batching system control panel. Instead, Plaintiff's counsel explains that he "did not know that

9

Standley Batch Systems, Inc. was the manufacturer of an essential component part of the PS 100 machine . . . until [his] discussion with defense counsel for Pathfinder Systems, Matthew Garson, on October 19, 2011." (Fictitious Party Certification, ¶¶20; 22.)

Like in *Matynska* and *Mears,* Plaintiffs failed to investigate all potentially responsible parties in a timely manner. Counsel waited four months after he was retained to request an on-site inspection. He then waited three additional months to follow up with Cambridge Pavers' insurance carrier regarding his request. He also failed to discover SBS's identity during the inspection even though Albibi stated in his deposition that the conveyor belt control panel had an SBS label on it. Not only did Plaintiffs' counsel delay the investigation process, but he failed to make "a simple inquiry at the job site." Given the delay in the investigation process, the delays caused by the scheduling conflicts, and the impending expiration of the statute of limitations, Plaintiffs' counsel could have telephoned someone at Albibi's job site in order to inquire about the machine in question.

Because there is no question of fact that Plaintiffs knew or should have known the identity of Defendant SBS before the expiration of the Statute of Limitation, Plaintiffs' amended complaint does not relate back to their original complaint. As such, SBS's motion for summary judgment is granted.

    b. Third-Party Defendant Cambridge Pavers' Motion for Summary Judgment.

        1. Pathfinder's Contribution Claim Against Cambridge Pavers is Dismissed as a Matter of Law.

New Jersey's Workers' Compensation Act ("WCA") "erect[s] an absolute barrier to third-party claims for contribution against employers." *Slater v. Skyhawk Transp., Inc.*, 77 F.Supp.2d 580, 586 (D.N.J. 1999) (citing *Ramos v. Browning Ferris Industries of South Jersey, Inc.,* 103 N.J. 177, 184 (1986)). The Third Circuit has held that "in New Jersey, an employer

governed by the Workers' Compensation Act is not liable for contribution to third-party tortfeasors, no matter what may be the comparative negligence as between the third party and employer." *Clement v. Conrail*, 963 F.2d 599, 601 n. 2 (3rd Cir. 1992) (citing *Ramos*, 103 N.J. at 177).

Third-Party Plaintiff Pathfinder does not address this issue. Instead, Pathfinder asks this Court to go against well-established Supreme Court of New Jersey precedent because "the issue is now ripe for further, in-depth consideration." (Third Party Plaintiff Pathfinder's Response Br., 13-14.) Pathfinder concedes that the *Ramos* decision prevents it from asserting claims of contribution and indemnity against Cambridge Pavers.[1] However, it asks this court to do away

---

[1] Pathfinder also argues that Cambridge Paver's motion for summary judgment should be denied because a reasonable jury could conclude that Cambridge Pavers intentionally harmed Plaintiff Albibi. A workers' compensation claim under the WCA is the exclusive remedy for employees that have been injured at work, unless their employer committed an intentional harm against them. N.J.S.A. 34:15-8. The Supreme Court of New Jersey has held that an employee may assert a cause of action against his or her employer for injuries received in the workplace if: (1) the employer knew "that [its] actions [were] substantially certain to result in injury or death to the employee" and, (2) "the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize." *Laidlow v. Hariton Mach. Co., Inc*., 170 N.J. 602, 617 (2002).
   However, Pathfinder has not pointed to any binding authority that extends this exception to the WCA's bar to claims of contribution and indemnity by third-party plaintiffs against employers. Instead, all of the authority that Pathfinder cites in opposition to Cambridge Pavers' motion relates to situations in which the injured employee, or the administrator of a deceased employee's estate, directly sues the employer under an intentional harm theory. *Id*. at 602 (holding that summary judgment on employee's intentional harm claim against employer was precluded because there were issues of fact regarding "whether [the] employer acted with knowledge that it was substantially certain [the plaintiff] would suffer an injury"); *Van Dunk v. Reckson Associates Realty Corp.*, 210 N.J. 449 (2012) (holding that summary judgment against the employee was appropriate because the "employer did not commit an intentional wrong causing employee's injuries") ; *Tomeo v. Thomas Whitesell Const. Co., Inc.*, 176 N.J. 366 (2003) (holding that summary judgment on employee's intentional harm claim against employer was precluded because employer's conduct "did not constitute an intentional wrong under the exception to the exclusive remedy provision of the Workers' Compensation Act"); *Crippen v. Cent. Jersey Concrete Pipe Co.,* 176 N.J. 397 (2003) (holding that "genuine issue of material fact as to whether companies' conduct fell within the intentional wrong exception to the exclusive remedy provision of the Workers' Compensation Act precluded summary judgment" of deceased employee's wrongful death suit against employer); *Mull v. Zeta Consumer Products*, 176 N.J. 385 (2003) (holding that "genuine issue of material fact as to whether employer's conduct. . . fell within the intentional wrong exception to the exclusive remedy provision of the [WCA], precluded summary judgment" of employee's claims against his employer); *Kaczorowska v. Nat'l Envelope Corp.*, 342 N.J. Super. 580 (App. Div. 2001) (affirming trial court's decision to deny employee's motion to assert a claim against her employer under the intentional wrong exception to the WCA); *Mann v. Heil Packer*, A-1293-08T2, 2010 WL 98883 (N.J. Super. Ct. App. Div. Jan. 13, 2010) (affirming trial court's decision to summarily dismiss a wrongful death suit against an employer under the intentional wrong exception of the WCA because plaintiffs failed to establish both prongs of the test); *D'Artagnan v. Ted Brewer Bldg. Contractor*, A-5180-04T1, 2006 WL 1388818 (N.J. Super. Ct. App. Div. May 22, 2006) (Affirming trial court's summary dismissal of employee's claim of intentional harm against employer because there

with the rule articulated by the Supreme Court of New Jersey and the Third Circuit. This Court will not consider this argument because doing would risk creating federal general common law:

> Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law.

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because the WCA creates an absolute bar to third party claims for contribution, Cambridge Pavers' motion of summary judgment is granted on this issue.

> 2. Pathfinder's Indemnity Claim Against Cambridge Pavers is Dismissed as a Matter of Law.

The WCA grants employers immunity from suits by third-parties seeking contribution or indemnity. Though the WCA creates an absolute barrier against contribution claims, it permits

---

was "no basis on which to conclude that defendants engaged in an intentional act, which would permit plaintiff to overcome [defendant's] motion for summary judgment"); *Torres v. Lucca's Bakery*, 487 F. Supp. 2d 507 (D.N.J. 2007) (dismissing employee's claim against his former employer because it was barred by the WCA since the employer did not act with knowledge that "it was substantially certain that an employee would be injured...").

Pathfinder cites to only two cases that deal with third-party plaintiff claims against an injured party's employer for contribution and indemnity. Yet, neither of those cases supports the proposition that third-party plaintiffs are entitled to recover under these causes of actions because of the WCA's intentional harm exception.

In *Stephenson v. R.A. Jones & Co., Inc.,* a third-party plaintiff, the manufacturer of a defective product, sought to recover against a third-party defendant, the employer of the injured worker, under theories of contribution and indemnity. 103 N.J. 194 (1986). The Supreme Court of New Jersey held that " a manufacturer's relationship to employer as vendor of the equipment involved in the accident did not support claim for implied indemnity." *Id*. at 199. The Court reasoned that:

> [T]he Workers' Compensation Act provides the exclusive remedy against an employer whose concurring negligence contributes to the injury on an employee. To permit the third-party tortfeasor to recover indemnification from the employer would subvert the immunity granted to the employer by the act.

*Id.* (citing *Ramos,* 103 N.J. at 189-90). Though the dissenting Justice expressed concern about the fairness of the majority's holding, the *Stephenson* decision does not support the proposition that the intentional harm exception applies to third-party claims of indemnity and contribution. Similarly, in *Robinson v. Rheon Automatic Mach. Co., Ltd.,* the second case cited by Pathfinder, Senior District Judge Joseph Irenas held that "the narrow doctrine of implied indemnification does not apply where the relationship [between the parties] is vendor-vendee." *Robinson v. Rheon Automatic Mach. Co., Ltd.,* CIV.A. 10-1916, 2011 WL 832241 (D.N.J. Mar. 3, 2011). Though the Court considered whether the third-party defendant committed an intentional harm, Judge Irenas did not hold that the intentional harm exception extended to third-party claims. As such, the opinion does not support Pathfinder's argument. However, even if it did, *Robinson* is not binding upon this Court.

claims for indemnification in limited circumstances. "[A] third-party may obtain indemnification from an employer in an instance where an employer has expressly agreed to indemnify the third party." *Slater v. Skyhawk Transp., Inc.*, 77 F. Supp. 2d 580, 586 (D.N.J. 1999). If there is no express agreement, a third party may recover under an implied indemnification theory.

"The implied indemnification doctrine is narrow, allowing the third party to recover only if (1) a special legal relationship exists between the employer and the third party, and (2) the third party's liability is vicarious." *Ryan v. United States*, 233 F.Supp.2d 668, 686 (D.N.J. 2002). "A special legal relationship exists" if the parties "are principal and agent, bailor and bailee, lessor and lessee, or union and union member." *See id.* (citing *Ramos,* 103 N.J. at 189). Furthermore,"[a] contract does not alone create a special relationship between the parties." *Id.* (citing *Ramos,* 103 N.J. at 190). "[A]llowing [a third party's] contract . . . to support a claim for implied indemnification against [an employer] would undermine the exclusive remedy provision of the Workers' Compensation Act." *Id.*; *see also Ryan,* 676 233 F.Supp.2d at 686.

Pathfinder does not explain why it is entitled to recover under an implied indemnification theory. Again, it requests this Court to go against well-established Supreme Court of New Jersey precedent. The relationship between Pathfinder and Cambridge Pavers is not that of a principal and agent, bailor and bailee, lessor and lessee, or union and union member. Further, their contractual agreement does not give rise to a special legal relationship that entitles Pathfinder to a cause of action under the implied indemnification theory. As such, Cambridge Pavers' motion for summary judgment is granted on this issue.

### IV.    CONCLUSION

For the reasons set forth above, Defendant SBS's motion for summary judgment [CM/ECF No. 88] is granted. Third-Party Defendant Cambridge Pavers' motion for summary judgment [CM/ECF No. 87] is also granted.

An appropriate Order accompanies this Opinion.

                                                          _____/s/ Jose L. Linares____
                                                          Jose L. Linares
                                                          United States District Judge

Dated: April 30, 2014